**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| ALLIED FIRE PROTECTION, INC., | * |
| Plaintiff, | * |
| | * |
| v. | *     Case No.: PWG-17-551 |
| | * |
| HUY THAI, | * |
| Defendant. | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION AND ORDER

Allied Fire Protection, Inc. ("Allied Fire") filed suit against former employee Huy Thai, alleging that, after Thai's employment ended, he breached a purported "Non-Compete/Non-Disclosure Agreement" that he signed and, specifically, the non-compete, non-solicitation, and non-disclosure provisions of that contract, as well as a provision requiring Thai to return his employer's property when his employment with the company ended. Allied Fire also claims that Thai is liable for tortious interference with contractual relations and prospective advantage, as well as intentional misrepresentation. Thai has moved to dismiss the case. ECF No. 7.[1] Thai's Motion to Dismiss is granted, as Allied Fire has failed to state a claim for which relief can be granted. But Allied Fire may amend its claims for breach of contract, tortious interference, and intentional misrepresentation, as discussed below if it has a good faith basis for doing so. Allied Fire's other claims are dismissed with prejudice.

---

[1] The parties fully briefed the motion. ECF Nos. 7-1, 17, 18. A hearing is not necessary. *See* Loc. R. 105.6.

Allied Fire, a Maryland corporation engaged in the business of "fire protection, suppression, consulting, design, engineering, fabrication and equipment installation," Compl. ¶ 3, ECF No. 2, employed Thai from 2006 to 2014. *Id*. ¶¶ 11-12. Thai was "initially hired . . . as an engineer to complete designs and drawings for some of the projects Plaintiff was hired to complete," and he "headed Plaintiff's business" during its chief executive officer's absence. *Id*. ¶¶ 4, 15. In that capacity, "Plaintiff's CEO trained the Defendant on how Plaintiff[] does business and revealed to the Defendant Plaintiff's industry trade secretes [sic] and advantages in the fire protection field." *Id*. ¶ 16. In 2013, Thai purportedly signed a "Non-Compete/Non-Disclosure Agreement" ("Agreement"). *Id*. ¶ 18.

For reasons that are not discernable from the record, and despite predicating its Complaint on two breaches of a purportedly written contract, Allied Fire did not attach the contract underlying its claims to its Complaint or any subsequent filing and has not produced it in response to Thai's numerous attempts to obtain it. *See* Compl.; Emails, ECF No. 18-1. Instead, Allied Fire summarizes the relevant provisions of the purported Agreement, and Thai does not appear to dispute the summary, which follows:

Defendant [is] not to:

[1] Provide or engage in any way business of a similar nature (i.e., engineering, consulting and general construction) to the business of the Plaintiff without written consent of the Plaintiff.

[2] Directly or indirectly engage in any similar business (i.e., engineering, consulting and general construction) with Plaintiff's former, current or future clients for Sixty (60) months after separation from Plaintiff's business.

[3] Solicit any client of Plaintiff for the benefit of a third party.

[4] Perform any work for any other company while working for Plaintiff.

---

[2] For purposes of considering Thai's Motion, this Court accepts the facts that Allied Fire alleged in its Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

[5] Keep Plaintiff's property (all documents and other tangible materials).

[6] Disclose any technical/nontechnical, data or other proprietary information related to products, inventions, plans, methods, processes, know-how, developmental or experimental work, computer programs, databases, authorship, customer list, vendors, suppliers, marketing methods, reports, analysis, plans, consultants, licensees, files, notebooks, samples, lists correspondence, software or other written or graphic records.

Compl. 2-3. Although the parties refer generally to a non-compete clause in their briefing, the first, second, and fourth provisions are the non-compete clauses; the third is a non-solicitation clause; the sixth is a non-disclosure clause; and the fifth provision, one not typically discussed in the context of restrictive covenants, I will refer to as the company property clause.

After Thai's employment with Allied Fire ended,[3] the employer filed suit against him in the Circuit Court for Prince George's County, Maryland, alleging four causes of action: (I) breach of contract (specifically, the Non-Compete/Non-Disclosure Agreement); (II) breach of the non-compete and non-solicitation provisions of the Agreement; (III) tortious interference with contractual relations and prospective advantage; and (IV) intentional misrepresentation. Allied Fire claims that Thai breached the Agreement when he "unlawfully obtained access to proprietary software" and used it to "perform work for one of Plaintiff's clients/competitors," which as best I can discern, is an allegation that Thai breached the non-disclosure agreement, and that Thai breached the Agreement when he retained company property, including a computer, cell phone, and documents, in violation of the company property clause. Compl. ¶¶ 12–13. Allied Fire also claims that Thai breached the non-compete and non-solicitation clauses when he "went to work for one of Plaintiff's clients to do the work that the client once hired Plaintiff to do" immediately upon termination, *id*. ¶ 20, and thereafter began "soliciting Plaintiff's clients to

---

[3] It is unclear from the face of the pleadings whether Thai's employment was terminated or occurred pursuant to mutual agreement, as Allied Fire states that Thai was both "fired," Compl. ¶ 11, and that he "mutually left" the company, *id*. ¶ 12.

do the work that such clients once hired the Plaintiff to perform," *id.* ¶ 21. Additionally, Allied Fire alleges that Thai tortiously interfered with its contractual relations by intentionally and willfully "steering [] business opportunities away" from Allied Fire and to himself or to Allied Fire's competitors "for a financial kickback"; offering unauthorized discounts and kickbacks; and "improperly pay[ing] people that Defendant would fire for work that never was done to obtain future favors from [them].". *Id.* ¶¶ 26-28. Lastly, Allied Fire contends that, after it terminated Thai's employment, he defrauded his former employer by intentionally misrepresenting himself as authorized to "handle clients[*] contract matters." *Id.* ¶¶ 30-31.

Thai removed the case to this Court under diversity jurisdiction on February 24, 2017 and filed the pending motion on March 3, 2017. Allied Fire an untimely opposition thirty-three days later on April 5, 2017, and Thai filed a timely reply on April 19, 2017.

## PERSONAL JURISDICTION

In its Opposition, Allied Fire challenges this Court's jurisdiction to resolve its claims because, it believes, to do so would violate Article I, § 10, Clause 1 of the United States Constitution, the so-called "Contracts Clause." Pl.'s Opp'n, 5, 10-13. Specifically, Allied Fire asserts that the purported Agreement included a "choice of law section" that stated:

> Any disputes arising from or related to the subject matter of this agreement shall be heard in an appropriate court of PG County, Maryland and the parties hereby consent to the personal jurisdiction and venue of these courts.

*Id.* at 11. In its view, if this Court maintained jurisdiction, it would interfere with the parties' obligations under this contractual provision, in violation of the Contracts Clause. Allied Fire seeks remand back to the Circuit Court for Prince George's County.

Thai argues that Allied Fire has waived the benefit of any forum selection clause that might have existed because the request for remand was untimely under 28 U.S.C § 1447(c), which requires that removal must be challenged within 30 days of filing of the notice of removal.

Def.'s Reply 9. Additionally, Thai contends that the purported forum selection clause does not constitute a waiver of the right to removal because the clause is ambiguous, not "clear and unequivocal." *Id.* at 10-11.

The contracts Clause provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1. Insofar as Thai insists that it would violate the Contracts Clause for this Court—part of the judiciary branch of the federal government—to maintain jurisdiction, his argument is completely without merit because "[t]he Contracts Clause applies only to the states, not to the federal government or individuals." *Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 587–88 (D. Md. 2016) (citing *Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 734 n.9 (1984)).

Moreover, although a party may assert lack of personal jurisdiction as a defense in a lawsuit, failure to do so in a timely manner waives this defense. *Ins. Corp. of Ireland, Ltd., v. Conmpagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Allied Fire did not file a timely motion to remand. Instead, it challenged personal jurisdiction in its Opposition, which it filed forty days after Thai removed the case to this Court and filed its Notice of Removal, ECF No. 1. An opposition is an inappropriate means of seeking remand on any ground other than lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 7(b)(1); *MHD-Rockland Inc. v. Aerospace Distribs. Inc.*, No. CCB-13-2442, 2014 WL 31677, at *6 (D. Md. Jan. 3, 2014) ("[A] district court can remand a case based on a defect other than a lack of subject matter jurisdiction only if a party makes a motion for the court to do so within thirty days of the filing of the notice of removal. By contrast, a district court can remand a case based on defects in subject matter jurisdiction at any time *sua sponte.* (citing *Ellenburg v. Spartan Motors Chassis, Inc.,* 519 F.3d 192, 198–99 (4th Cir. 2008))). Further, Allied Fire did not challenge the validity of the removal

to this Court in the required 30 days from the filing of notice of removal, *see* 28 U.S.C. § 1447(c); *MHD-Rockland*, 2014 WL 31677, at *6. Consequently, Allied Fire has forfeited the right to challenge the jurisdiction of this Court. Therefore, this Court has personal jurisdiction over Plaintiff. *See Ins. Corp. of Ireland*, 456 U.S. at 703.

In any event, the purported forum selection clause, stating that disputes "shall be heard in an appropriate court of PG County, Maryland," does not vest exclusive jurisdiction in the state courts. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 374, 380 (2012) (construing statutory provision that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring a private action *in an appropriate court of that State*" and concluding that "[n]othing in th[at] permissive language . . . makes state-court jurisdiction exclusive . . . ." (emphasis added)). Indeed, under federal law,[4] "[a] general maxim in interpreting forum-selection clauses is that 'an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion.'" *IntraComm, Inc. v. Bajaj,* 492 F.3d 285, 290 (4th Cir. 2007) (quoting *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. & Distrib., Inc.*, 22 F.3d 51, 53 (2d Cir. 1994)) (emphasis in *John Boutari*; internal citation and quotation marks omitted)). Therefore, this Court, which is located in Prince George's County, Maryland, has jurisdiction under the forum selection clause to hear this case.[5] *See Mims*, 565 U.S. at 380.

---

[4] "[A] federal court interpreting a forum selection clause must apply federal law in doing so," because "a forum selection clause implicates what is recognized as a procedural matter governed by federal law—the proper venue of the court." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). Therefore, I will apply federal law to interpret this clause. *See id.*

[5] It is undisputed that the parties are diverse and the amount in controversy exceeds $75,000, giving rise to jurisdiction under 28 U.S.C. § 1332(a)(1).

# MOTION TO DISMISS

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain sufficient factual matter in the form of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, the complaint must state, on its face, "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plaintiff must raise a "right to relief above the speculative level" and "nudge[] [his] claims . . . across the line from conceivable to plausible." *See, e.g., McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 587 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 570).

**Breach of Contract (Count I) and Breach of Covenant Not to Compete (Count II)**

Thai insists that Allied Fire's claims for breach of contract and breach of the non-compete and non-solicitation claims[6] should be dismissed "because the Agreement is unenforceable as a matter of law." *See* Def.'s Mem. 4. He argues that the Agreement "is far wider in scope and duration that is necessary to protect the employer's interests and . . . imposes an undue hardship on Defendant." *Id.* at 4–5. Notably, his argument pertains specifically to "[t]he non-compete and non-solicitation provisions in the Agreement," however. *See id.* at 5–6, 8–13. He does not address the enforceability of the non-disclosure and company property provisions of the Agreement that are at issue in Count I.

Allied Fire, which alleged (in conclusory language) in its Complaint that the Agreement was reasonable given the "nature of Plaintiff's disclosures, industry trade secretes [sic] and Defendant['s] level of authority and responsible [sic]," Compl. ¶ 19, counters that the restrictive covenants are reasonably limited in terms of "area and duration" in a manner that is necessary to protect its "legitimate business interest," Pl.'s Opp'n 6. Additionally, Allied Fire contends that no geographical limitation is necessary because the Agreement only restricts access to its "established clients." *Id.* at 8-9. Alternatively, Allied Fire argues that, should any provision of the Agreement be determined to be overly broad, "blue penciling"[7] would be appropriate. Thai counters that blue-penciling would be inappropriate here because the provisions in questions are intertwined and cannot be separated.

---

[6] Although Allied Fire titles Count II "Breach of Covenant Not to Compete," he alleges breaches of both the non-compete and non-solicitation clauses in this count.

[7] When faced with unreasonable restrictive covenants, blue-penciling allows a court to "excise language to reduce the covenant's reach to reasonable limits." *Deutsche Post Global Mail, Ltd. v. Conrad*, 116 Fed. App'x 435, 438 (4th Cir. 2004). However, for a court to be able to blue-pencil (if otherwise appropriate), it needs to have the actual contract language. Here, that is not the case, as the summary Allied Fire provided refers to "Plaintiff," a term that would not have applied to it at the time the contract was drafted.

<u>*Enforceability*</u>

Restrictive covenants in employment contracts limit an individual's right to employment, and therefore they are generally viewed "with caution and read narrowly." *SNS One, Inc. v. Hage*, No. L-10-1592, 2011 WL 2746713, at *3 (D. Md. July 11, 2011).[8] For restrictive covenants (which include non-compete, non-solicitation, and non-disclosure clauses) to be enforceable,

> (1) the employer must have a legally protected interest,
>
> (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest,
>
> (3) the covenant cannot impose an undue hardship on the employee, and
>
> (4) the covenant cannot violate public policy.

*Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771, 773 (D. Md. 2015) (citing *Deutsche Post Global Mail, Ltd. v. Conrad*, 116 Fed. App'x 435, 438 (4th Cir. 2004)); *see also Mansell v. Toys R Us, Inc.*, 673 F. Supp. 2d 407, 416 (D. Md. 2009) (noting that under Maryland law, "a covenant not to compete can may be sustained only if 'the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer") (citing *Ruhl v. Bartlett Tree Co.*, 225 A.2d 288, 291 (Md. 1967)). "In assessing the reasonableness of scope and duration [of a restrictive covenant], 'a determination must be made based on the scope of each particular covenant itself; and, if that is not too broad on its face, the facts and circumstances of each case must be examined.'" *Medispec Ltd.*, 133 F. Supp. 3d at 774-75 (quoting *Deutsche Post*, 116 Fed. App'x at 438).

---

[8] Allied Fire brings its four claims pursuant to Maryland law, and the parties agree that Maryland law applies. *See* Def.s Mem. 5–20 (applying Maryland law); Pl.'s Opp'n 5–13 (applying Maryland law). Accordingly, I look to Maryland case law, as well as federal cases applying Maryland law.

It is well established that an employer has a protected interest in "preventing departing employees from taking with them the customer goodwill they helped to create for the employer." *See Seneca One Finance, Inc. v. Bloshuk*, 214 F. Supp. 3d 457, 461 (D. Md. 2016) (quoting *Deutsche Post*, 116 Fed. App'x at 438). However, a restrictive covenant will be construed as overly broad if it goes beyond what is needed to safeguard the employer's legally protected interest in that goodwill. *Id.*

In *Seneca One Finance. Inc.*, this Court granted a motion to dismiss a plaintiff's claims for breach of her employment contract's non-compete provision for overbreadth. 214 F. Supp. 3d 457. The provision prevented prior employees from "engaging, directly or indirectly, in the same or similar business as [the employer]," language quite similar to that of the purported Agreement here. *Id.* at 461-62. Specifically, the non-compete clause stated:

> While [employee is] employed by Seneca One and for 12 months after the termination of [her] employment for any reason, [she] will not directly or indirectly, for [herself] or on behalf of any other person or entity, engage or attempt to engage in the same or similar Business as Seneca One in any of the markets in which Seneca One has provided products or services or formulated a plan to provide products or services during the last 12 months of [her] employment with Seneca One.

*Id.* The Court held that the provision was not designed "to prevent the employees from taking advantage of customer goodwill created while employed at Seneca One," but rather "to prevent former employees from working for any competitor," which "is not a legally protected interest." *Id.* at 462; *see also MCS Serv., Inc. v. Jones*, No. WMN-10-1042, 2010 WL 3895380, at *3 (D. Md. Oct. 1, 2010) (finding provision stating defendant "shall not . . . directly or indirectly . . . be employed by . . . any other entity . . . in competition with, or similar in nature to, [MCS]" was too broad to be enforced).

Here, the non-compete and non-solicitation provisions restrict Thai from "provid[ing] or engag[ing] in any way business of a similar nature . . . to the business of the Plaintiff without written consent of the Plaintiff," or "directly or indirectly engag[ing] in any way business of a similar nature . . . with Plaintiff's former, current or future clients for Sixty (60) months after separation from Plaintiff's business," or soliciting Plaintiff's clients for a third party.  Compl. ¶ 10.  This language imposes a sweeping limitation on Thai's ability to obtain employment by purporting to restrict Thai's ability to engage *directly or indirectly* in *any* type of engineering, consulting or general construction business *anywhere* within Maryland or for that matter, the world.  As in *Seneca One*, the non-compete provisions here are not narrowly tailored to protect customer goodwill that the employee cultivated during his employment; they prevent the employee from working for the employer's competitors. They cover not only clients who have worked or still worked with Allied Fire, but also "future clients," without any limitation whatsoever on who may qualify as a future client.  According to Plaintiff, this broad scope was necessary to protect its legitimate business interests because of the extent of Thai's authority in the company and knowledge of its trade secrets.  But, his insider knowledge is addressed through the non-disclosure clause (which, as noted, Thai does not specifically challenge), and Allied Fire has neither shown nor alleged how the non-compete and non-solicitation provisions are useful in accomplishing this goal or reasonable in light of the inclusion of the non-disclosure clause. Thus, the non-compete provisions and the non-solicitation provision are overbroad and unenforceable.  *See Seneca One*, 214 F. Supp. 3d at 462; *MCS Serv.*, 2010 WL 3895380, at *3; *ImpactOffice, LLC v. Siniavsky*, No. TDC-16-1851, 2016 WL 8672916 at * 5 (D. Md. Nov. 18, 2016) (finding restriction on former employee prohibiting solicitation of "prospective customers" regardless of contact with former employee overbroad).

*Duration*

The duration of one non-compete provision at issue is sixty months, or five years, and the other provisions do not have durational limits.  Compl. 2–3.  As Allied Fire paraphrased the non-compete provisions, one prohibited the employee from "[d]irectly or indirectly engage in any similar business (i.e., engineering, consulting and general construction) with Plaintiff's former, current or future clients *for Sixty (60) months* after separation from Plaintiff's business," while the others prohibited him from ever engaging in similar business without Plaintiff's written consent or working for Plaintiff and another company, simultaneously, and the non-solicitation provision prohibited him from ever soliciting Plaintiff's clients for a third party.  *Id.* (emphasis added).

"[F]ive-year non-compete clauses rarely have been upheld by Maryland courts." *Mansell*, 673 F. Supp. 2d at 417 n.8 (concluding that "five years [was] an unreasonably long period of time to restrict future employment" because employees never formed personal relationships with clients; noting that five-year period in *Holloway*, 572 A.2d at 523, was unreasonable "because after three years any business with [accountant's former employer's] clients would result from his competitive efficiency and not the relationships he forged while an employee").  The *Mansell* Court did not identify any five-year non-compete clauses that had been upheld in Maryland, and Allied Fire cites only to state court cases in Colorado, Illinois, and Indiana (which are not binding on this Court) that upheld non-compete clauses with durations of five or more years.  *See* Pl.'s Opp'n 8.

In *Holloway* and *Mansell*, the courts considered how much time needed to pass before any clients leaving the employer would be leaving for legitimate business reasons, rather than because they had formed a relationship with the departing employee and wanted to maintain it.

*Mansell*, 673 F. Supp. 2d at 417 n.8; *Holloway*, 572 A.2d at 523. Additionally, courts consider "the facts of a particular case and the interest of the employer sought to be protected." *Holloway v. Faw, Casson & Co.*, 572 A.2d 510, 522 (Md. 1990). Allied Fire asserts that "no one knew more about the inter-workings, strategies, business advantages and clientele outside of Plaintiff Owner than the Defendant," and "[t]herefore, the restriction on the Defendant was reasonable." Pl.'s Opp'n 8. But, given that this knowledge is the subject of the non-disclosure clause, it does not justify non-compete and non-solicitation provisions of five years or more. Allied Fire also states (albeit with regard to the geographic limitation) that "the only concern is for Plaintiff's legitimate interest in losing established clients to the Defendant because Defendant had the opportunity to get to know the clients and develop a personal relationship with them as a result of working for Plaintiff company." Pl.'s Opp'n 9. Yet, Allied Fire does not explain why five years were reasonable or necessary in its industry to ensure that clients did not leave Plaintiff because they wanted to maintain such a relationship with Thai. Moreover, as noted, the non-compete provision prohibiting Thai from engaging in similar business with Allied Fire's clients does not pertain only to "established clients"; it also covers "future clients," without any limitation whatsoever on who may qualify as a future client. Additionally, Allied Fire does not explain why the non-solicitation clause's indefinite duration is reasonable. Consequently, Allied Fire has not shown that, under the facts of this case, five years or more was a reasonable duration for the non-compete and non-solicitation provisions.

### *Geographic limitation*

The non-compete provisions does not have any geographic limitation. Certainly, in *Padco Advisors, Inc., v. Omdahl*, 179 F. Supp. 2d 600 (D. Md. 2002), this Court found that a non-compete provision without a geographical limitation was reasonable because it was aimed

specifically at two of 100 competitors. And, in *Intelus Corp. v. Barton*, 7 F. Supp. 2d 635 (D. Md. 1998), this Court held that a non-compete clause without any geographical limitation was valid because it limited non-competition to one of ten competitors and no undue hardship to the employee resulted. Allied Fire also cites *Gill v. Computer Equip. Corp.*, 292 A.2d 54, 59 (Md. 1972), where "no territorial limitation [was] imposed," but the court found that "competition [was] defined, in effect, as working for customers of [one division of the employer] of the year prior to termination of employment," such that the non-compete clause pertained to a "narrow area" and "was not unreasonable," and *Tuttle v. Riggs-Warfield-Roloson*, 246 A.2d 588, 590–91 (Md. 1968), where the restrictive covenant "specifically reserv[ed]" one specific account to the employer. In contrast, here, as noted, the scope of the non-compete is vast and not limited to a specific group of clients, such that the same rationale for approving a non-compete clause without a geographic limit is not present.

According to Allied Fire, "[n]o geographic limitation is needed because the clause restricted only access to employer's clients" and "the only concern is for Plaintiff's legitimate interest in losing established clients to the Defendant because Defendant had the opportunity to get to know the clients and develop a personal relationship with them as a result of working for Plaintiff company." Pl.'s Opp'n 9. But, Plaintiff cannot amend its pleadings in its Opposition, *see Velasquez v. Wexford Health Sources, Inc.*, No. PWG-16-1807, 2017 WL 4151278, at *8 (D. Md. Sept. 19, 2017), and as noted, its Complaint referred to future, as well as established, clients and does not allege a relationship between Thai and clients. Moreover, the Complaint describes non-compete provisions that limit far more than access to clients; they also limit the type of business Thai can provide without Plaintiff's written consent. Compl. 2–3. Thus, the geographic

scope of the restrictive covenants is not limited by the circumstances of this case, and the absence of a geographic limitation is not reasonable.

<em><u>Hardship on Defendant and public interest</u></em>

A non-compete clause does not impose undue hardship when the former employee is allowed to perform similar work. *See Allegis Group, Inc. v. Jordan*, No. GLR-12-2535, 2014 WL 2612604, at *7 (D. Md. June 10, 2014) (citing *Intelus*, 7 F. Supp. 2d at 642). Additionally, the public has a strong interest in the enforcement of reasonable restrictive covenants in employment contracts, as they play an important role in the growing and development of businesses. *See Intelus*, 7 F. Supp. 2d at 642. But restrictive covenants that are "unduly restrictive of the employee's freedom" are invalid as a matter of law. *See Ruhl*, 225 A.2d at 293 (quoting *Deuerling v. City Baking Co.*, 141 A. 542, 543 (Md. 1928) ("[T]he right to labor or use one's skill, talents, or experience for one's own benefit, or furnish them to another for compensation, is a natural and inherent right of the individual . . . .")). Here, the non-compete clause does not allow Thai to accept similar work; in fact, it expressly forbids doing so unless he first obtains Allied Fire's consent. Enforcing the non-compete provisions would allow Allied Fire total control over Thai's ability to make a living in any field even similar to what he did at Allied Fire, and thereby unreasonably impede his ability to work. This control would create undue hardship on Thai, which violates public policy.

Thus, the non-compete and non-solicitation provisions are unreasonable and not enforceable. But, this does not mean, that either the non-disclosure or company property clause is unreasonable, and Thai has not argued, let alone shown, that either is not reasonable. *See* Def.'s Mem. 4, 5–6, 8–13 (challenging the scope and duration of "[t]he non-compete and non-solicitation provisions in the Agreement"). Because these clauses are a part of the Agreement

that is, in part, unenforceable, the question becomes whether the unenforceable provisions can be stricken, such that an enforceable contract remains.

In certain cases, restrictive covenants that are overly broad can be "blue penciled" to eliminate unreasonable provisions. *See Deutsche Post*, 116 Fed. App'x at 439.

> "When a promise in reasonable restraint of trade in a bargain has added to it a promise in unreasonable restraint, the former promise is enforceable unless the entire agreement is part of a plan to obtain a monopoly; but if full performance of a promise indivisible in terms would involve unreasonable restraint, the promise is illegal and is not enforceable even for so much of the performance as would be a reasonable restraint."

*Holloway,* 572 A.2d at 518 (quoting Restatement (First) of Contracts § 518). Thus, "[a] court can only blue pencil a restrictive covenant if the offending provision is neatly severable"; it cannot "rearrange or supplement the language of the restrictive covenant." *Id.*

Here, Allied Fire has not provided the Agreement or even quoted the relevant clauses verbatim. All it has done is paraphrase them. Under these circumstances, it is not possible for me to find that any part of the Agreement "is neatly severable" and blue pencil it. *See id.*

Consequently, Count II for breach of the non-compete and non-solicitation provisions, as well as Count I for breach of contract (and specifically, the non-disclosure and company property provisions) ARE DISMISSED. Dismissal of Count I is **with prejudice** because the Complaint could not be amended to state a claim based on an unenforceable contract clause. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) ("[D]ismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim."). As for Count II, dismissal is without prejudice. Allied Fire will have the opportunity to amend its Complaint with regard to Count II, provided that it believes it has a good faith basis for doing so and it attaches a copy of the actual Agreement to its amended complaint.

**Tortious Interference with Contractual Relations and Prospective Advantage  (Count III)**

*Contractual Relations*

To state a claim for tortious interference with contractual relations, a plaintiff must allege:

(1) existence of a contract between plaintiff and a third party;

(2) defendant's knowledge of that contract;

(3) defendant's intentional interference with that contract;

(4) breach of that contract by the third party; and

(5) resulting damages to the plaintiff.

*Discovery Commc'ns, LLC v. Computer Sciences Corp.*, 570 Fed. App'x 306, 306 (4th Cir. 2014) (quoting *Fowler*, 598 A.2d at 802); *see Mansell*, 673 F. Supp. 2d at 415–16.

Allied Fire claims that Thai "improperly pa[id] people that [he] would hire for work that was never done to obtain future favors from such individuals."  Compl. ¶ 27.  Even reading this paragraph in the light most favorable to Plaintiff, as I must, *see Aziz*, 658 F.3d at 390, Allied Fire has not alleged that it had a contract with these third parties; rather, it appears to allege that Thai contracted with third parties. And, it does not allege any breach of these contracts; its issue appears to be with the contracts' maintenance, rather than their breach.  Thus, it has not stated a claim based on Thai's payments to third parties.  *See McIntyre v. Guild, Inc.*, 659 A.2d 398, 410 (Md. Ct. Spec. App. 1995) (concluding that defendant was entitled to judgment as a matter of law because there was no breach contract); *121 Assocs. Ltd. P'ship v. Tower Oaks Boulevard, LLC*, No. 0906 Sept.Term 2014, 2015 WL 7076013, at *10 (Md. Ct. Spec. App. Nov. 12, 2015) (party cannot prevail on tortious interference with contract claim without proof that third party breached the contract), *cert. denied sub nom. Tower Oaks Blvd. v. Ronald Cohen Invs.*, 136 A.3d 818 (Md. 2016).

Allied Fire also claims that Thai promised its clients "discounts and kickback[s]" that it did not authorize, "caus[ing] confusion and complication with contracts to the point where the Plaintiff had to agree to loose [*sic*] money in order to keep the client or simply lose the client." *Id.* ¶ 28. These threadbare allegations do not identify the third parties specifically, describe the incentives Thai offered them, or state what the clients did in response to the offer or Allied Fire's reluctance to honor it. Moreover, while Allied Fire vaguely alleges that Thai intentionally interfered with its client contracts, causing it to lose money and/or clients, Allied Fire does not allege that any client breached its contract with the company. Accordingly, Plaintiff fails to state a claim for tortious interference with contractual relations. *See McIntyre*, 659 A.2d at 410; *121 Assocs. Ltd. P'ship*, 2015 WL 7076013, at *10.

## *Prospective Advantage*

To state claim for tortious interference with prospective advantage, a plaintiff must allege the following elements in its complaint:

> (1) intentional and willful acts;
>
> (2) calculated to cause damage to the plaintiffs in their lawful business;
>
> (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and
>
> (4) actual damage and loss.

*Audio Visual Assocs., Inc. v. Sharp Elecs. Corp.*, 210 F.3d 254, 261 (4th Cir. 2000) (citing *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 269 (Md. 1994)); *see Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 695 (D. Md. 2012); *Williams v. Wicomico Cty. Bd. of Educ.*, 836 F. Supp. 2d 387, 389 (D. Md. 2011) (citing *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (Md. 1989)). The right to be free from interference with prospective economic advantage is broader than the right to be free from interference with contractual relations, as this right "exists where no contract or a contract terminable at will is

involved." *Oce N. Am., Inc. v. MCS Servs., Inc.*, 795 F. Supp. 2d 337, 348 (D. Md. 2011) (citing *Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984)). Wrongful or malicious interference with economic relations occurs by "conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Alexander & Alexander Inc.*, 650 A.2d at 271. The Maryland Court of Appeals has defined this wrongful or unlawful conduct as "wrongful or unlawful acts includ[ing] common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Id*. (citing *K & K Mgmt.*, 557 A.2d at 979).

Allied Fire claims that Thai intentionally diverted future business away from it, to himself or competitors, and thereby caused the employer to suffer financial loss. Compl. ¶¶ 25–26. Yet, this contention is not supported by sufficient factual allegations to render it plausible. There is no indication of what business opportunities were lost, to whom Thai "steered" the supposed business opportunities to, what improper payments or favors were exchanged between Thai and others, nor any indication of Thai's unlawful acts or malicious purpose. Consequently, Allied Fire fails to state a claim for tortious interference with prospective advantage.

Count III is dismissed without prejudice to filing an amended complaint that addresses these deficiencies, should Allied Fire have a good faith basis for doing so.

### **Intentional Misrepresentation (Count IV)**

The tort of intentional misrepresentation, also referred to as fraud or deceit, requires a plaintiff make particularized allegations of the following elements to ascertain relief:

(1) the defendant made a false representation to the plaintiff,

(2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth,

(3) the misrepresentation was made for the purposes of defrauding the plaintiff,

(4) the plaintiff relied on the misrepresentation and had the right to rely on it, and

(5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 438 (D. Md. 2015); *see Sakala v. Milunga*, No. PWG-16-790, 2017 WL 2986364 at *2 (D. Md. Jul. 13, 2017); *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 49 (Md. 2013); *Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008). Additionally, Allied Fire's fraud allegations must meet the heightened pleading standard required under Rule 9(b), which mandates a party to state "with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013).

> Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such allegations [of fraud] typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form. The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all of the facts are learned only after discovery; and to safeguard the defendant's reputation.

*Id*. (citations omitted); *see Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781-82 (4th Cir. Apr. 19, 2013).

Allied Fire alleges that Thai committed fraud by "knowingly, willfully, and intentionally" misrepresenting his authority to "accept and handle client contract matters" when clients would call a business cell phone in Thai's possession. Compl. ¶ 30. Thus, Allied Fire claims that Thai made false representations to third parties—not to it. But, since it fails to allege that Thai made any false representations to *it*, and consequently it cannot realistically argue that any other

element of the claim is present. Moreover, Allied Fire's vague allegations of misconduct do not satisfy the heightened pleading standard for fraud claims under Fed. R. Civ. P. 9(b). Allied Fire has failed to allege any of the required information to plead this claim (time, place, contents of misrepresentation) except the identity of the speaker. Consequently, Allied Fire has failed to plead this claim with the required particularity and has not stated a claim of intentional misrepresentation.

Count III is dismissed without prejudice to filing an amended complaint that addresses these deficiencies, should Allied Fire have a good faith basis for doing so.

**CONCLUSION**

In sum, for the reasons stated above, Defendant's Motion to Dismiss, ECF No. 7, IS GRANTED as follows:

| Count | Claims | Status |
|---|---|---|
| I - Breach of Contract | A. Breach of non-disclosure provision<br>B. Breach of company property provision | Dismissed without prejudice to filing an amended complaint with Agreement attached |
| II - Breach of Covenant Not to Compete | A. Breach of the non-compete provisions<br>B. Breach of the non-solicitation provision | Dismissed with prejudice |
| III - Tortious Interference with Contractual Relations and Prospective Advantage | A. Tortious interference with contractual relations<br>B. Tortious interference with prospective advantage | Dismissed without prejudice to filing an amended complaint |
| IV - Intentional Misrepresentation | Intentional Misrepresentation | Dismissed without prejudice to filing an amended complaint |

Plaintiff is strongly encouraged to take note of its pleading deficiencies in the original complaint, and to address them with the amended complaint. Having been afforded an opportunity to amend, any subsequent dismissal may be with prejudice.

**ORDER**

Accordingly, it is this <u>2nd</u> day of <u>October</u>, <u>2017</u>, by the United States District Court for the District of Maryland, hereby ORDERED that:

1.  Defendant's Motion to Dismiss, ECF No. 7, IS GRANTED as follows:

    a.  Count II (Breach of Covenant Not to Compete) IS DISMISSED WITH PREJUDICE;

    b.  Counts I (Breach of Contract), III (Tortious Interference with Contractual Relations and Prospective Advantage), and IV (Intentional Misrepresentation) ARE DISMISSED WITHOUT PREJUDICE to filing an amended complaint by October 23, 2017;

        i.   The amended complaint shall address the deficiencies in Plaintiff's pleading, if Plaintiff has a good faith basis for doing so, but will not include any claims other than Counts I, III, and IV;

        ii.  If Plaintiff amends Count I, it shall file a copy of the Agreement with the amended complaint;

        iii. If Plaintiff does not file an amended complaint by October 23, 2017, the Complaint will be dismissed in its entirety with prejudice; and

2.      If Plaintiff files an amended complaint, Defendant's response is due within twenty-one days of receipt of the amended complaint.

_____/S/_____
Paul W. Grimm
United States District Judge